IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

REBECCA FARLEY
and KEVIN FARLEY,

        Plaintiffs,

v.              CIVIL ACTION NO. 5:16-cv-09442

NEW RIVER COMMUNITY AND
TECHNICAL COLLEGE, and
MICHAEL S. CURRY,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed *New River Community and Technical College's Motion to Dismiss* (Document 6) and *Memorandum of Law in Support* (Document 5), the *Plaintiffs' Response to New River Community and Technical College's Motion to Dismiss with Incorporated Memorandum of Law* (Document 12), and *New River Community and Technical College's Reply to Plaintiffs' Response to Its Motion to Dismiss* (Document 13). The Court has also reviewed all attached exhibits and the Plaintiff's *Complaint* (Document 1-1). For the reasons stated herein, the Court finds that the motion should be granted.

**FACTUAL AND PROCEDURAL BACKGROUND**

The Plaintiffs, Rebecca and Kevin Farley, initiated this suit in the Circuit Court of Raleigh County, West Virginia, on September 2, 2016. They named New River Community and Technical College ("New River") and Michael S. Curry as defendants. New River removed the

matter to this Court on October 10, 2016, citing federal question jurisdiction. The Plaintiffs allege that Rebecca Farley was a student at New River from the time she enrolled in January of 2012 until she graduated in May of 2015. In the fall semester of 2012, Ms. Farley took two classes from the Defendant, Professor Michael Curry. While taking his classes, Ms. Farley exchanged text messages with Professor Curry, but alleges that the text messages strictly concerned course related matters.

At some point during the month of December 2012, the Plaintiffs allege that Professor Curry sent an inappropriate email to Ms. Farley containing a picture of "his erect penis." (Pls.' Complaint, at ¶29.) On or about December 21, 2012, the Plaintiffs allege that Professor Curry also sent an inappropriate text message to Ms. Farley's phone containing "a picture of [his] naked and hairy legs." (*Id.* at ¶17-20.) Ms. Farley's husband saw the picture before Ms. Farley did, and, suspecting that Ms. Farley was having an affair, confronted her about the message. Ms. Farley denied ever engaging in any type of inappropriate relationship with Professor Curry. Mr. Farley alleges that he promptly reported the conduct to New River, but that New River refused to investigate his complaint because he was not a student. Ms. Farley also alleges that she then complained to the school about Professor Curry's conduct, but states that she "did not press her complaint, however, because Professor Curry was teaching a course the following semester . . . that was a required course for Rebecca's major," and she "feared that pressing her complaint . . . would harm her ability to succeed in Professor Curry's class." (*Id.* at ¶33-35.) Ms. Farley alleges that, because she did not press her complaint, New River did not appropriately investigate it. After the spring semester of 2013, Ms. Farley had no more classes with Professor Curry.

2

On September 6, 2014, Ms. Farley went to New River's Raleigh County campus. That evening, at approximately 11:00 p.m., Professor Curry allegedly sent another text to Ms. Farley's phone. Mr. Farley noticed the text before Ms. Farley, and again became very angry. Mr. Farley alleges that he began to respond to Professor Curry's texts to ensure that it was him. Mr. Farley alleges that he woke Ms. Farley up to show her the texts, and that the two began to continue exchanging texts "in order to further draw out Professor Curry." (*Id.* at ¶49.) The Plaintiffs allege that Professor Curry sent texts to Ms. Farley's phone that expressed how he was aroused by Ms. Farley and how he wanted her to "jump [his] bones," and that Professor Curry again sent a picture to Ms. Farley's phone "contain[ing] a picture of his erect penis." (*Id.* at ¶44-45.) Professor Curry also allegedly sent text messages to Ms. Farley "instructing her to 'Take off those shorts.'" (*Id.* at ¶50.)

On the following Monday, September 8, 2014, Ms. Farley complained to New River about Professor Curry's messages, and New River initiated an investigation into Professor Curry's reported conduct. However, Ms. Farley asserts that in conducting their investigation, New River only interviewed her, and that questions posed to her attempted to minimize the alleged incident and seek out whether she had incidents similar to this in her past. Professor Curry resigned from New River in October of 2014. Ms. Farley alleges that, as a result of Professor Curry's conduct, she lost her passion for school, her attendance fell, and her grades slipped. She also alleges that New River offered no assistance to help with what Professor Curry had done to her, and that she had to endure rumors and speculation throughout campus that she engaged in inappropriate conduct with Professor Curry. She alleges that these circumstances took away her drive to attend college and led her to look for reasons to skip class and not be on campus. Mr. and Mrs. Farley

3

assert causes of action of sexual harassment and discrimination by both Professor Curry and New River in violation of Title IX. The Plaintiffs also assert a claim of reckless infliction of emotional distress against Professor Curry himself.

New River filed a motion to dismiss the claims against it on October 12, 2016. The Plaintiffs filed a response in opposition on November 7, 2016 and New River filed its reply on November 11, 2016. The motion is fully briefed and ripe for review.

## STANDARD OF REVIEW

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted tests the legal sufficiency of a complaint or pleading. *Francis v. Giacomelli,* 588 F.3d 186, 192 (4th Cir. 2009); *Giarratano v. Johnson,* 521 F.3d 298, 302 (4th Cir. 2008). Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Additionally, allegations "must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (*quoting Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 555 (2007)). In other words, "a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Moreover, "a complaint [will not] suffice if it tenders naked assertions devoid of further factual enhancements." *Iqbal,* 556 U.S. at 678 (*quoting Twombly,* 550 U.S. at 557) (internal quotation marks omitted).

4

The Court must "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007).   The Court must also "draw[ ] all reasonable factual inferences from those facts in the plaintiff's favor."   *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999).   However, statements of bare legal conclusions "are not entitled to the assumption of truth" and are insufficient to state a claim.   *Iqbal,* 556 U.S. at 679.   Furthermore, the court need not "accept as true unwarranted inferences, unreasonable conclusions, or arguments."   *E. Shore Mkts., v. J.D. Assocs. Ltd. P'ship,* 213 F.3d 175, 180 (4th Cir. 2000). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice . . . [because courts] 'are not bound to accept as true a legal conclusion couched as a factual allegation.'"   *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 555).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'"   *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 570).   In other words, this "plausibility standard requires a plaintiff to demonstrate more than 'a sheer possibility that a defendant has acted unlawfully.'" *Francis,* 588 F.3d at 193 (quoting *Twombly,* 550 U.S. at 570).   A plaintiff must, using the complaint, "articulate facts, when accepted as true, that 'show' that the plaintiff has stated a claim entitling him to relief." *Francis,* 588 F.3d at 193 (quoting *Twombly,* 550 U.S. at 557).   "Determining whether a complaint states [on its face] a plausible claim for relief [which can survive a motion to dismiss] will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."   *Iqbal,* 556 U.S. at 679.

5

## DISCUSSION

New River seeks dismissal of the Plaintiffs' Title IX claim.  At the outset, the Court notes that the Plaintiffs and the Defendant agree that Mr. Farley has no standing to assert Title IX claims against New River because he was not a student at New River.  Both parties further agree that the Plaintiffs cannot recover damages on any alleged harassment that occurred in 2012 because the statute of limitations has lapsed.  The Court agrees and finds that any Title IX claims asserted by Mr. Farley must be dismissed because at no time was he a student at New River.  Further, pursuant to W.Va. Code § 55-2-12, the statute of limitations for Title IX claims is two years.  Accordingly, any claims for recovery based on alleged harassment that occurred in 2012 should be dismissed.

Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."  20 U.S.C. § 1681. "To establish a Title IX claim on the basis of sexual harassment, a plaintiff must show that (1) she was a student at an educational institution receiving federal funds, (2) she was subjected to harassment based on her sex, (3) the harassment was sufficiently severe or pervasive to create a hostile (or abusive) environment in an educational program or activity, and (4) there is a basis for imputing liability to the institution." *Jennings v. Univ. of N. Carolina*, 482 F.3d 686, 695 (4th Cir. 2007).

### A. *Severe and Pervasive Harassment*

Conceding that Ms. Farley has satisfied the first two elements of a Title IX claim, New River first argues that Ms. Farley's Title IX claims must fail because she has not pled sufficient facts to establish that Professor Curry's alleged harassment was severe or pervasive.  New River

argues that the Plaintiffs only point to two occasions of alleged harassment over a period of three and a half years, and that the only occurrence of alleged harassment came in the form of text messages. New River further contends that Ms. Farley did not have any classes with Professor Curry at the time she received the text messages in December 2014, and that when those messages were received, Ms. Farley and her husband sent responses to Professor Curry that led him to believe the exchange was welcome and consensual. Therefore, New River argues that the Plaintiffs have not proven that the alleged harassment was severe or pervasive enough to constitute a Title IX violation.

The Plaintiffs argue that the text messages sent to Ms. Farley were more than merely sexually suggestive, but were obscene, including an alleged close-up picture of Professor Curry's genitalia in an aroused state. Further, the Plaintiffs contend that Professor Curry's texts were predatory in nature when considered in conjunction with his position as a professor at the time they were sent. Because of Professor Curry's position of authority and trust, the Plaintiffs argue that the messages sent to Ms. Farley were indeed severe and pervasive enough to satisfy a Title IX claim.

>Concerning the severity element of a Title IX claim, the *Jennings* Court stated as follows:
>
>Harassment reaches the sufficiently severe or pervasive level when it creates an environment that *a reasonable person would find hostile or abusive* and that the *victim herself subjectively perceives to be abusive*. Whether gender-oriented harassment amounts to actionable (severe or pervasive) discrimination depends on a constellation of surrounding circumstances, expectations, and relationships. All the circumstances are examined, including the positions and ages of the harasser and victim, whether the harassment was frequent, severe, humiliating, or physically threatening, and whether it effectively deprived the victim of educational opportunities or benefits.

*Jennings*, 482 F.3d at 696 (internal quotations emitted) (emphasis added).

Ms. Farley alleged in her complaint that she received a string of lewd text messages from Professor Curry, including inappropriate pictures and statements clearly insinuating that Professor Curry wished to engage in a sexual relationship with Ms. Farley. While Ms. Farley was not in Professor Curry's class at the time, Professor Curry was still a professor at New River when he sent the messages, and still maintained a position of power and authority. While in this position, Ms. Farley alleges that Professor Curry said things like "Saw you as I was leaving. Wanted you badly," "Want you to jump my bones," and "You smiled and dismissed my erection." (Pls.' Complaint, Ex. 1.) Ms. Farley also alleges that Professor Curry sent a picture of "his erect penis" in this string of text messages (*Id.* at ¶45.), that she subjectively perceived this to be abusive and physically threatening, and that she felt feelings of humiliation and discomfort at receiving these messages as a married woman.

Given Professor Curry's position as her past professor and a current educational employee at New River when the text messages were sent, and accepting as true Ms. Farley's allegations regarding the content of the messages, the Court assumes, without finding, for purposes of this ruling, the facts alleged by Ms. Farley are sufficient to support severe and pervasive acts for purpose of a Title IX claim, regardless of the Plaintiffs' responses to the messages.[1]

  B. *Hostile or Abusive Environment*

Second, New River seeks to dismiss Ms. Farley's Title IX claim on the ground that she has not stated facts sufficient to show she was deprived of any educational benefit at New River. New River argues that Ms. Farley has not alleged any facts in her complaint that she was discouraged from pursuing a complaint against Professor Curry, and that she has not alleged that New River

---

1 The Court notes that, even if responses from Mr. and Ms. Farley may partially mitigate the continued inappropriate conduct by Professor Curry, Professor Curry himself initiated the conversation and sent the first message.

retaliated against her in any way after she lodged a formal complaint. New River also contends that Ms. Farley was not deprived of any educational benefit because she did not have any class with Professor Curry at the time the alleged harassment occurred in 2014, Professor Curry resigned from New River shortly after the alleged incident, and Ms. Farley graduated in May of 2015 with her associate's degree.

Ms. Farley counters that up until the alleged incident with Professor Curry in 2014, she earned excellent grades and her attendance was stellar. However, after the alleged incident, Ms. Farley's grades and attendance both suffered. Ms. Farley further asserts that even though Professor Curry resigned from the school once an investigation was initiated, he still managed "to ruin the last year of her academic career" due to the interviewing process she was forced to undergo during the college's investigation and because of the rumors she was forced to endure while she finished her degree, hardships she otherwise would not have had to endure in completing her education. The Plaintiffs contest that these allegations sufficiently state that Ms. Farley was deprived of educational benefits and therefore discriminated against under Title IX.

In proving actionable discrimination in a Title IX claim, "a plaintiff must establish sexual harassment of students so severe, pervasive, and objectively offensive, and that so undermines and detracts from the victims' educational experience, that the victim-students are effectively denied equal access to an institution's resources and opportunities." *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 651 (1999). Further, "[t]he relationship between the harasser and the victim necessarily affects the extent to which the misconduct can be said to breach Title IX's guarantee of equal access to educational benefits and to have a systematic effect on a program or activity." *Id.* at 653. The Fourth Circuit explained in *Jennings* that, based on the Supreme Court's holding

in *Davis*, a victim's sexual harassment can be said to have denied the victim equal access to educational opportunities or benefits when, among other things, the harassment "has 'a concrete negative effect on [the victim's] ability' to participate in an educational program or activity." *Jennings*, 428 F.3d at 699 (internal citations omitted).

In *Jennings*, the Fourth Circuit found that the plaintiff had provided sufficient evidence to show that she suffered severe and pervasive sexual harassment in a manner that had a concrete negative effect on her ability to participate in the soccer program at her university. *Id.* The plaintiff, a member of the women's soccer team at the defendant university, presented evidence that the soccer coach regularly brought up and discussed inappropriate details of the players' sex lives in a manner that created a "sexually charged atmosphere" around the team. *Id.* at 697-99. The court noted that the plaintiff satisfied the *Davis* standard because she was not merely subjected to one encounter of sexual comments by the soccer coach, but that the coach had created an "atmosphere" under which the plaintiff and others on the team "had to endure sexual harassment in order to play." *Id.* at 700. The court further noted that the plaintiff had suffered two direct instances of harassment by the coach, one of which included an encounter in a hotel room wherein the coach asked her personal questions about her sex life with no other players around. *Id.* at 693. The plaintiff testified that the hostile atmosphere created by her soccer coach's constant discussion of the players' personal sex lives made her feel humiliated, anxious, and uncomfortable, which negatively affected her performance on the soccer team and in the classroom. *Id.* at 699. Thus, the court found that the coach's persistent talk about players' sex lives and the direct targeting of the plaintiff on two occasions created a hostile environment that lead to a drop in the plaintiff's

10

academic and athletic performance, thereby having a concrete, negative effect on her ability to participate in an educational program or activity. *Id.* at 700.

Here, the Court finds that Ms. Farley has not alleged sufficient facts in her complaint to survive a motion to dismiss under this prong of the *Jennings* elements. Ms. Farley's complaint alleges that on one actionable occasion Professor Curry sent her text messages clearly showing that he sought to engage in a sexual relationship with her while she was a student at New River. (Pls.' Complaint at ¶44-46.) While there can be no doubt that the messages Ms. Farley received were objectively offensive and clearly inappropriate, there are no allegations that Ms. Farley was forced to endure sexual harassment on a regular basis while earning her degree. Ms. Farley admitted in her complaint that Professor Curry was not her professor at the time he sent the text messages, and that he resigned from New River shortly after the investigation began. Thus, unlike the plaintiff in *Jennings*, Ms. Farley was not required to have continued contact with Professor Curry, was not subject to his leadership after the alleged incident occurred, and does not claim that any similar actions occurred after the conduct alleged in her complaint.

Ms. Farley does allege that she suffered embarrassment, stress, and anxiety due to the rumors on campus surrounding her allegations, and that her grades fell because of this stress and embarrassment. However, stress and embarrassment resulting from rumors and falsehoods is not the same as fear or continued suffering resulting from a persistent atmosphere of sexual harassment necessarily endured in order to finish school. The latter factual scenario is not alleged by Ms. Farley. Further, the Supreme Court in *Davis* failed to find that "a mere 'decline in grades is enough to survive' a motion to dismiss." *Davis*, 526 U.S. at 652. Given the absence of allegations in Ms. Farley's complaint supporting an atmosphere of sexual harassment that she had to endure

11

to earn her degree, the Court finds that she has not alleged sufficient facts to show that the alleged conduct created a hostile environment such that she was denied equal access to her institution's resources and opportunities. *See*, *DeCecco v. Univ. of S.C.*, 918 F. Supp. 2d 471, 479 (D.S.C. 2013) (holding that one instance of alleged harassment wherein a soccer coach held a meeting with a player behind a locked door and allegedly toucher her thigh was not severe or pervasive under the Davis standard to create a hostile environment that denied plaintiff access to educational benefits or opportunities); *Doe v. Georgetown Cty. Sch. Dist.*, No. 2:14-CV-01873-DCN, 2015 WL 5923610, at *1 (D.S.C. Oct. 9, 2015) (holding that one instance of alleged sex-based inappropriate comment by cheerleading coach to a student cheerleader was not severe or pervasive enough to effectively deny the student equal access to an institution's resources and opportunities and thus did not constitute harassment under Title IX).

The Court finds that the Plaintiff has not pled sufficient facts (when accepted as true) to support a finding that the alleged harassment she suffered was such that it deprived her of equal access to the institution's educational resources or opportunities. In other words, the Court grants New River's motion to dismiss inasmuch as the Plaintiff has not sufficiently alleged that the harassment of which she complains was sufficiently severe or pervasive to create a hostile or abusive environment in an educational program or activity. As a result, the Court need not address the Defendant's arguments on institutional liability.

## CONCLUSION

WHEREFORE, after thorough review and careful consideration, the Court **ORDERS** that *New River Community and Technical College's Motion to Dismiss* (Document 6) be **GRANTED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER: February 1, 2017

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA